UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HIN Y. LIMTUNG,

               Plaintiff,                       **MEMORANDUM AND ORDER**

       v.                             19-CV-3646 (RPK) (MMH)

PETER S. THOMAS, 3170 CRESCENT LLC.,
WELLS FARGO BANK, N.A., WELLS FARGO
BANK, N.A., *c/o Marix Servicing, LLC*, WELLS
FARGO BANK, N.A., *c/o Slene Finance LP*,
MARGOLIN & WEINREB LAW GROUP, LLP.,
WILMINGTON SAVINGS FUND SOCIETY, FSB,
*not in its individual capacity, but solely as Trustee
of the Primestar-H Fund I Trust*, WILMINGTON
SAVINGS FUND SOCIETY, FSB, *not in its individual
capacity but solely as Trustee of the Primestar-F
Fund II Trust*, WELLS FARGO BANK, N.A. *not in its
individual or banking capacity, but solely as Trustee for
SRMOF II 2011-1 Trust, its Successor and Assigns, c/o
Selene Finance LP*, EMC MORTGAGE LLC, DOONAN,
GRAVES & LONGORIA LLC, STEVEN J. BAUM, P.C.,
JANE DOE 1-4, RICHARD ROE 1-4, UNKNOWN
TRUST 1-4, SUPRIYA KICHLOO, ANTONIO
DISAVERIO, PETER V. MAIMONE, EMC
MORTAGE CORPORATION, and
SELENE FINANCE LP,

               Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

     This is the second federal case that *pro se* plaintiff Hin Limtung has brought alleging a

conspiracy among financial institutions, real-estate companies, and law firms to deprive him of

his house. Plaintiff first alleged such a conspiracy in a 2016 lawsuit. That suit was dismissed for

failure to state a claim. Afterward, plaintiff initiated this action against fourteen defendants,

many previously named in the 2016 lawsuit. Plaintiff alleges fraud and violations of 42 U.S.C. §

1983 and the Racketeer Influenced and Corruption Organizations ("RICO") Act, 18 U.S.C. §

1961 *et seq.*  He also seeks a declaratory judgment that the deed transferred to the property's new owner is a forgery.  Defendants have filed seven motions to dismiss.  For the reasons explained below, plaintiff's Section 1983 claim is dismissed.  Because I am prepared to dismiss plaintiff's claims for RICO violations and request for a declaratory judgment on grounds not raised by the defendants, I will afford plaintiff forty-five days to submit a supplemental memorandum of law rebutting those grounds for dismissal.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the complaint and assumed true for the purposes of this order.

Plaintiff owns a house at 31-70 Crescent Street in Astoria, New York.  Second Am. Compl. ¶¶ 18, 21 (Dkt. #27).  On August 6, 2007, defendant Wells Fargo Bank and its attorney, defendant Steven J. Baum, P.C., foreclosed on the property in the Supreme Court of the State of New York.  *Id.* ¶ 19.  Plaintiff represented himself in the foreclosure lawsuit and argued that Wells Fargo Bank did not own the note and mortgage and that he was not in default.  *Id.* ¶¶ 20, 21.  In later motions in state court, plaintiff argued that Wells Fargo Bank and its attorneys committed fraud against him during the foreclosure proceeding.  *Id.* ¶ 22.

On February 19, 2009, the state court granted summary judgment to Wells Fargo Bank.  *Id.* ¶ 23.  The state court then appointed Arthur W. Lonschein as a referee.  *Id.* ¶ 24.  According to plaintiff, Lonschein determined that Wells Fargo Bank and its attorneys had committed fraud, including by concealing plaintiff's mortgage payments to make plaintiff appear to be in default.  *Id.* ¶¶ 25-27.  Plaintiff also alleges that Lonschein determined that Wells Fargo Bank did not actually own the note and mortgage on the property.  *Id.* ¶ 29.

Following Lonschein's determination, Wells Fargo Bank allegedly conspired with numerous law firms, corporations, and individuals to substitute defendant Peter S. Thomas as the referee. *Id.* ¶ 35. To obtain the substitution, the conspirators submitted false affidavits stating that EMC Mortgage Corporation owned the note and mortgage and changed the caption of the case without a court order. *Ibid.* Plaintiff identifies defendants Doonan, Graves & Longoria LLC, Margolin & Weinreb Law Group, LLP, EMC Mortgage Corporation, and EMC Mortgage LLC as participants in this conspiracy. *Ibid.*

Once Thomas became the referee, plaintiff alleges, Thomas did not give the plaintiff notice or hold a hearing. *Id.* ¶ 36. Thomas's failure to conduct a hearing was part of a conspiracy involving a separate set of defendants, including Wells Fargo Bank, Wilmington Savings Fund, FSB as trustee of the Primestar-H Fund I Trust, and EMC Mortgage Corporation. *Id.* ¶ 37. Together, Thomas, Wells Fargo Bank, and Wilmington Savings Fund sent forged note and mortgage documents and false affidavits to the state court. *Ibid.* The conspirators also lied about the amount of interest charged in the mortgage, misrepresented the note and mortgage as conjoined when they had been separated, and committed securities fraud. *Ibid.* Plaintiff further alleges that the defendants executed similar forged note and mortgage assignment documents in various other state and federal actions. *Id.* ¶ 90.

After years of resisting the foreclosure in state court, on November 9, 2015, plaintiff filed for bankruptcy. *See id.* ¶ 38. The next day, plaintiff alleges, Thomas told plaintiff that the property would be sold despite the bankruptcy action. *Ibid.* Although plaintiff asked for a mandatory hearing to contest Thomas's findings, Thomas refused and sold the property. *Id.* ¶¶ 40-41. Thomas's conspiracy to sell the property involved Margolin & Weinreb Law Group, LLP. *Id.* ¶ 39.

Plaintiff alleges both that Thomas transferred the deed to defendant 3170 Crescent LLC ("Crescent"), *id.* ¶ 42, and that Thomas's signature on the deed was forged, *id.* ¶ 43. Defendant Supriya Kichloo notarized the alleged forgery. *Id.* ¶ 43. Crescent and defendant Antonio Disaverio then registered the forged deed. *Ibid.*

After the deed was transferred, Crescent waged a violent campaign to remove plaintiff from the property. On June 20, 2019, Disaverio and other unidentified Crescent employees broke down the door, threatened plaintiff, and damaged the building. *Id.* ¶ 44. They only stopped when the police arrived. *Ibid.* Six days later, Disaverio and his accomplices broke into the building again and attacked plaintiff until the police intervened. *Id.* ¶ 45. On July 31, 2019, Crescent's "hooligans" told plaintiff that if he refused to vacate the house, they would "come back to do 'the [p]laintiff in a 'Mafia like' action." *Id.* ¶ 46. Plaintiff also discovered "that the doors to his private quarters were broken" while he was out of the house. *Ibid.* A month later, Crescent employees entered the house and destroyed a video camera surveillance system. *Id.* ¶ 47. Plaintiff alleges that they entered the house on two further occasions, destroying video cameras and threatening him. *Id.* ¶¶ 48-49.

On September 18, 2019, 3170 Crescent LLC, Disaverio, and defendant Peter V. Maimone submitted the forged deed to New York City Civil Court in an eviction proceeding against plaintiff. *Id.* ¶¶ 47-48, at 23.[*]

## II.    Procedural Background

In 2016, plaintiff brought an action in federal court under RICO and the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against a similar group of defendants. *See* Compl., *Limtung v. Steven J. Baum, P.C.*, No. 16-CV-100 (Dkt. #1) ("2016

---

[*] The complaint includes duplicative paragraph numbers. Where needed for clarity, citations are provided to page numbers in the complaint.

Compl."). The complaint alleged "that defendants perpetrated a complex conspiracy to secure foreclosure on his [31-70 Crescent Street] property through fraud." Order dated June 26, 2017 at 2 ("Mauskopf Order") (Dkt. #52). The events comprising the alleged conspiracy included the use of false note and mortgage documents between 2012 and 2014 and the improper sale of the house in 2015. 2016 Compl. ¶¶ 45-53, 74.

Several defendants—including Peter S. Thomas, Selene Finance LP, and Wells Fargo Bank—moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). Mauskopf Order at 3. Judge Roslynn R. Mauskopf granted the motions. She found plaintiff's FDCPA claims were time-barred and that the fraud predicates in his RICO claim were not plead with particularity. *Id.* at 5-8. Judge Mauskopf gave plaintiff leave to amend. *Id.* at 8-9. Plaintiff filed three proposed amended complaints, each about 300 pages long. Judge Mauskopf denied leave to amend and dismissed the case. Order dated Mar. 20, 2019 at 5 (Dkt. #79) ("Second Mauskopf Order").

Plaintiff filed this case on June 21, 2019. *See* Compl. (Dkt. #1). The operative Second Amended Complaint includes five causes of action.

First, plaintiff brings a claim under 42 U.S.C. § 1983 against Thomas. Plaintiff alleges that Thomas violated plaintiff's Fifth Amendment due process rights and First Amendment right to petition the government for redress of grievances. *See* Second Am. Compl. at 13; *id.* ¶ 49, at 23-24. Plaintiff asks for compensatory damages of $ 1.5 million. *Id.* ¶ 127.

Second, plaintiff brings a RICO claim against Thomas, Kichloo, Crescent, Disaverio, Maimone, Wells Fargo Bank, Steven J. Baum P.C., Doonan, Graves & Longoria, LLC, Margolin & Weinreb Law Group, LLP, Wilmington Savings Fund as trustee of the "[Primestar-F Fund I

Trust]," Selene Finance LP, and Wells Fargo Bank as trustee for SRMOF II 2011-1 Trust. *Id.* at 24.  Plaintiff alleges that the defendants committed the predicate offenses of federal wire fraud, 18 U.S.C. § 1343, federal fraud, 18 U.S.C. § 1028, state law forgery, N.Y. Penal § 170.10, state law criminal possession of a forged instrument, N.Y. Penal § 170.25, state law burglary, N.Y. Penal §§ 140.20, 140.25, and state law extortion, N.Y. Penal § 155.05(2)(e).   Second Am. Compl. ¶¶ 52, 57.  The events that gave rise to those offenses include the 2014 submission of the allegedly forged note and mortgage assignment documents to the state courts, the 2015 sale of the property despite plaintiff's bankruptcy protections, the alleged forgery of the deed, the registry of the forged deed with the City of New York, the use of the forged deed in litigation, and Crescent's campaign to evict plaintiff.  *Id.* ¶¶ 53, 55-69.

Third, plaintiff claims that the same defendants engaged in a conspiracy to commit racketeering activity.  *See* 18 U.S.C. § 1962(d); Second Am. Compl. at 41.  For the two RICO counts, plaintiff asks for fines and compensatory damages equal to treble $1.5 million.  Second Am. Compl. ¶ 128.

Fourth, plaintiff brings a state-law fraud claim against Thomas, Margolin & Weinreb Law Group, LLP, Wilmington Savings Fund Society, FSB as trustee of the "[Primestar-F Fund I Trust]," Selene Finance LP, and Wells Fargo Bank as trustee for SRMOF II 2011-1 Trust.  *Id.* at 45.  The fraud claim stems from Thomas's substitution as referee in 2013, the alleged submission of forged documents to the state court in 2014, and the sale of the property in 2015.  *Id.* ¶¶ 110-17.  Plaintiff asks for fines and compensation of $1.5 million on this count.  *Id.* ¶ 129.

Fifth, plaintiff seeks a declaratory judgment that the deed executed on June 19, 2019, is a forgery.  *Id.* ¶¶ 119-23.

Defendants filed seven separate motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mem. in Supp. of Mot. to Dismiss (Dkt. #38) ("Margolin Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #45) ("Selene Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #49-2) ("Kichloo and Thomas Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #50-1) ("Maimone Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #51-2) ("Wilmington Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #55) ("Wells Fargo Mot."); Mem. in Supp. of Mot. to Dismiss (Dkt. #59-11) ("Crescent Mot."). The moving defendants are Selene Finance LP, Wells Fargo Bank, N.A. as trustee for SRMOF II 2011-1 Trust, Kichloo, Thomas, Maimone, Margolin & Weinreb Law Group, LLP, the Wilmington Savings Fund defendants, Wells Fargo Bank, N.A., and Crescent. Among other arguments, defendants contend that plaintiff's claims are barred by the *Rooker-Feldman* doctrine, res judicata, and statutes of limitations, and that plaintiff failed to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d

239, 243 (2d Cir. 2014) (internal quotation marks and alteration omitted) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When a plaintiff is proceeding *pro se*, the complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the plaintiff should be given an opportunity to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999) (per curiam)); *see Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

## DISCUSSION

Contrary to defendants' contentions, plaintiff's claims are not barred by the *Rooker-Feldman* doctrine. But plaintiff's Section 1983 claim is barred by res judicata. In addition, plaintiff's RICO claim appears to be inadequately pleaded, and his request for a declaratory

judgment appears to lack a jurisdictional basis.  If those remaining federal claims are dismissed, I would also decline to exercise supplemental jurisdiction over plaintiff's state-law fraud claim. Because defendants did not raise the issues regarding plaintiff's RICO and declaratory-judgment claims that I discuss, however, plaintiff is granted forty-five days to explain why those apparent deficiencies do not warrant dismissal.

## I.      *Rooker-Feldman*

Defendants err in contending that the Court lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine.  *See* Wells Fargo Mot. at 10-11; Crescent Mot. at 2-3; Kichloo and Thomas Mot. at 24-25; Maimone Mot. at 8-10; Margolin Mot. at 22-24; Selene Mot. at 9-11; Wilmington Mot. at 6-9.  That doctrine establishes "that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)).  But it is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  In contrast, it does not bar a plaintiff from "present[ing an] independent claim . . . that denies a legal conclusion that a state court has reached in a case to which he was a party."  *Id.* at 293 (citation omitted). Accordingly, for a claim to be barred, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."  *Sung Cho,* 910 F.3d at 645 (citing *Hoblock*, 422 F.3d at 85).  These limitations are stringent enough that one court of appeals recently advised district courts to "keep

one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

This is not one of the rare cases in which *Rooker-Feldman* bars a federal suit. Plaintiff's claims do not meet the second and third requirements. The Second Circuit has explained that a plaintiff does impermissibly seek a remedy for injuries caused by a state court judgment and ask the district court to review and reject that judgment when the plaintiff asks to invalidate a state foreclosure judgment, or to "grant him title to his property because the foreclosure document was obtained fraudulently." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); s*ee, e.g.*, *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016); *Desir v. Fla. Capital Bank, N.A.*, 377 F. Supp. 3d 168, 172 (E.D.N.Y. 2019); *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 275 (S.D.N.Y. 2018). By contrast, the second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries. *Vossbrink*, 773 F.3d at 427; *see Worthy-Pugh*, 664 F. App'x at 21; *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015); *Hylton*, 338 F. Supp. 3d at 275. In other words, a plaintiff may "seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment." *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021).

Plaintiff's complaint is not best read to complain of injuries caused by the foreclosure judgment or to ask me to review and reverse that judgment. Counts One through Four allege that defendants violated plaintiff's constitutional rights and participated in a racketeering enterprise that committed fraud, burglary, and extortion. *See* Second Am. Compl. ¶¶ 49-118. They seek compensatory damages of "no less than" $1.5 million. *See id.* ¶¶ 126-29. It is true that $1.5

10

million is also the approximate value that plaintiff assigned to 31-70 Crescent Street in a previous version of the complaint. First Am. Compl. at 2 (Dkt. #7). And "a claim for damages equal to the full value of . . . property" might be "a request to 'undo' the state court judgment." *Dorce*, 2 F. 4th at 108 n.29; *see Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017). But here, plaintiff alleges extensive misconduct other than procuring a wrongful judgment and does not expressly link his damages request to the property's asserted value. Accordingly, at this stage of the case, these counts are best read to seek compensation for alleged harms "caused by an opponent's alleged misconduct, rather than a state court judgment ratifying that conduct." *Dorce*, 2 F. 4th at 107.

Count Five likewise does not "complain of injuries caused by a state-court judgment" or "invite district court review and rejection of that judgment." *Sung Cho,* 910 F.3d at 645. That count seeks a declaratory judgment that the deed transferred after the foreclosure judgment bears a forged signature. *See* Second Am. Compl. ¶¶ 119-23. Although such a declaration would mean that the deed itself did not transfer title to the property, *see In re Grimes*, 147 B.R. 307, 313 (Bankr. E.D.N.Y. 1992), it would not invalidate the foreclosure. *Cf. Simmons v. Reich*, No. 19-CV-3316(EK)(ST), 2020 WL 7024345, at *10 (E.D.N.Y. Nov. 30, 2020) (questioning why defendants would need a forged deed after obtaining a foreclosure judgment). It therefore does not invite review and rejection of the state-court judgment.

Defendants principally argue that plaintiff seeks review of the state-court foreclosure judgment because plaintiff's "arguments are premised on" the invalidity of the foreclosure and sale, Maimone Mot. at 10; Selene Mot. at 11, or "inextricably intertwined" with the state court's determinations, Wilmington Mot. at 8 (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 504 (S.D.N.Y. 2016)). But even if plaintiff's arguments regarding fraudulent

documents would undermine a premise of the foreclosure decision, *Rooker-Feldman* allows "the district court to den[y] a legal conclusion that a state court has reached . . . so long as the district court does not engage in review and rejection of the state court judgment." *Dorce*, 2 F.4th at 107 (internal quotation marks and citations omitted) (alteration in original).  Even if I contradicted the state court and found that defendants committed fraud, as explained above, compensatory damages would not reverse the foreclosure judgment.  Because this case does not "essentially amount to [an] appeal[] of [a] state court judgment," *Vossbrinck*, 773 F.3d at 426, defendants' motions to dismiss for lack of jurisdiction are denied.

## II.        Section 1983 Claim

Defendants' motions to dismiss plaintiff's Section 1983 claim is granted.  The only defendant named in plaintiff's Section 1983 cause of action is Thomas.  *See* Second Am. Compl. at 13; *id.* ¶ 49, at 23.  Plaintiff alleges that Thomas violated his First and Fifth Amendment rights by (i) failing to hold a mandatory hearing, (ii) submitting false affirmations to the state court, (iii) selling the property during the pendency of plaintiff's bankruptcy case, (iv) transferring the deed to Crescent despite those prior constitutional violations and fraud, and (v) conspiring with Crescent "and the other [d]efendants" to intimidate plaintiff out of his house.  *Id.* ¶ 49, at 23. Defendants argue that these contentions are barred by res judicata and that they fail to state a Section 1983 claim.  *See, e.g.*, Kichloo and Thomas Mot. at 11-12, 14-15; Margolin Mot. at 13-15; Wilmington Mot. at 3-6.  I agree that plaintiff cannot pursue a Section 1983 action based on these claims, because plaintiff's non-conclusory Section 1983 allegations are barred by res judicata.

Under the doctrine of res judicata, a plaintiff's claims are barred as a matter of law by a previous action when: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in

the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks, alterations, and citations omitted).  Here, the first two requirements are met because Judge Mauskopf dismissed plaintiff's previous suit against Thomas and others for failure to state a claim, among other grounds.  Mauskopf Order at 8.  Then, the district court denied plaintiff leave to amend his complaint and dismissed the case in its entirety because "his allegations [did] not state a claim under RICO."  Second Mauskopf Order at 4, 5.  Dismissal for failure to state a claim is an adjudication on the merits.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981), *abrogated on other grounds by Rivet v. Regions Bank*, 522 U.S. 470 (1998); *Iotova v. Patel*, 293 F. Supp. 3d 484, 487-88 (S.D.N.Y. 2018).

Moreover, plaintiff's Section 1983 claim "could have been[] raised in the prior action." *Pike*, 266 F.3d at 91.  This portion of the *res judicata* inquiry turns on "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).  Whether two actions arise from the same transaction depends on the relationship between their underlying facts "in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Ibid.* (quoting *Pike*, 266 F.3d at 91).  Res judicata applies only when "the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Pike*, 266 F.3d at 91.

That standard is met here. Most of the events on which plaintiff's Section 1983 claim relies—Thomas's alleged refusal to hold a hearing, his alleged submission of false affirmations to the state court, and his alleged sale of the property—occurred before the 2016 action was brought. *See* Second Am. Compl. ¶¶ 35-41. And plaintiff's 2016 RICO claim relies on similar allegations of a false referee's report, the illegal sale, and a fraud conspiracy. *See* 2016 Compl. ¶¶ 100, 105-13. Indeed, the 2016 complaint refers to Thomas's participation in a conspiracy to foreclose fraudulently on the property, the sale of the property despite plaintiff's bankruptcy, and Thomas's false referee report. *Id.* ¶¶ 52-62, 74, 81. While the 2016 lawsuit invoked RICO rather than Section 1983, res judicata bars plaintiff from raising new claims about the transactions at issue in the first lawsuit simply by invoking a new legal theory. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 206 (2002) (per curiam).

Plaintiff does not save his claim by also invoking Thomas's transfer of the deed to plaintiff's home to Crescent in 2019—after the 2016 lawsuit. Second Am. Compl. ¶ 42. That post-judgment conduct could support a Section 1983 claim if it were "sufficient to state a cause of action on its own—without the need to incorporate facts that preceded the first suit," or if it reflected "legally significant acts occurring after the filing of [the] prior suit." *TechnoMarine SA*, 758 F.3d at 500, 501 (internal quotation marks and emphasis omitted) (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)). But based on plaintiff's framing of the facts, the transfer of the deed does not state a cause of action by itself. Plaintiff alleges that Thomas deprived him of his constitutional rights when he transferred the deed *because* he knew that the foreclosure resulted from fraud, the sale was illegal, and he had already violated plaintiff's constitutional rights. Second Am. Compl. ¶ 49, at 23-24. And while the deed transfer

14

had a legal effect on plaintiff's property rights in the house, plaintiff does not explain how the transfer of the deed was a "legally significant act" for the Section 1983 claim. *Cf. Poppington, LLC v. Brooks*, No. 20-cv-8616 (JSR), 2021 WL 3193023, at *5 (S.D.N.Y. July 27, 2021). Because plaintiff "has based his action principally upon the common nucleus of operative facts shared with" his prior lawsuit, and the deed transfer's role appears to be limited to "resurrect[ing] a claim, grounded almost entirely upon . . . [prior] events," plaintiff cannot escape res judicata. *TechnoMarine*, 758 F.3d at 502 (quoting *Waldman*, 207 F.3d at 113, 114); *see McCluskey v. Roberts*, No. 19-CV-2386 (RRM) (ARL), 2020 WL 6449234, at *5 (E.D.N.Y. Nov. 3, 2020).

Plaintiff's additional post-2016 allegation of a conspiracy between Thomas and others is too conclusory to save his Section 1983 claim. "[C]onclusory or general allegations are insufficient to state a claim for conspiracy under [Section] 1983." *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005); *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Here, plaintiff asserts that after the 2016 lawsuit, Thomas "conspired" with Crescent and the other defendants to break into plaintiff's house and threaten plaintiff. Second Am. Compl. ¶ 49.

But he includes no further factual detail or support for that allegation. Without more, this allegation cannot support a Section 1983 claim. Because plaintiff's only non-conclusory Section 1983 allegations are barred by res judicata, defendants' motion to dismiss Count One is granted.

## III.   RICO Claims

Plaintiff has not adequately pleaded substantive RICO or RICO-conspiracy claims. The federal RICO statute provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962" of the RICO Act. 18 U.S.C. § 1964(c). Section 1962, in turn, makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity." *Id.* § 1962(c). "Racketeering activity" includes "act[s] or threat[s]" involving state law crimes of "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance" that are "punishable by imprisonment for more than a year," and "any act which is indictable" under specified provisions of Title 18 of the United States Code, including mail and wire fraud. *Id.* §§ 1961(1)(A), 1961(1)(B). The RICO statute also imposes liability on individuals who conspire to violate it. *Id.* § 1962(d).

The complaint alleges that twelve defendants committed substantive RICO violations (Count Two) and RICO conspiracy (Count Three). Second Am. Compl. ¶¶ 50-108; *see* 18 U.S.C. §§ 1962(c), 1962(d). As explained below, plaintiff's substantive RICO claims fail because plaintiff has not adequately pleaded that defendants operated as a RICO enterprise. Plaintiff's RICO conspiracy claim fails because plaintiff has not adequately pleaded that defendants agreed to form a RICO enterprise or to commit predicate RICO acts.

### A. Plaintiff's substantive RICO claims are not adequately pleaded.

Plaintiff's substantive RICO claims fail because plaintiff has not adequately alleged a RICO enterprise. To plead a substantive violation of the RICO statute under Section 1962, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. § 1962(a)-(c). The RICO statute defines "enterprise" broadly to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

16

associated in fact although not a legal entity."   18 U.S.C. § 1961(4).   A RICO enterprise, therefore, is "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital Asset Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).   Additionally, because a RICO enterprise is not coterminous with the pattern of racketeering activity it commits, *Turkette*, 452 U.S. at 583, the plaintiff must plead that defendants operated through an organization with "an ascertainable structure distinct from that inherent in a pattern of racketeering," *Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004).   And the enterprise must be distinct from the persons who conduct its operations.   *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).

Plaintiff has failed to adequately allege the existence of a RICO enterprise.   Plaintiff states "that the ongoing association" of the defendants "are linked by their actions described [in the complaint] sufficiently [to] form an [e]nterprise."   Second Am. Compl. ¶ 81; *see id.* ¶ 76 ("[T]he . . . [d]efendants did associate with a RICO [e]nterprise of [i]ndividuals . . . ."); *id.* ¶ 71 ("[T]he . . . [d]efendants . . . are . . . part of an [a]ssociation-[i]n-[f]act [e]nterprise . . . .").   Such a "[t]hreadbare recital" of the enterprise element, "supported by mere conclusory statements, [does] not suffice" to state a RICO claim.   *Iqbal*, 556 U.S. at 678.

At most, plaintiff alleges that various defendants committed various acts of fraud together.   *See, e.g.*, Second Am. Compl. ¶¶ 37, 53.   But plaintiff provides no facts that suggest that the defendants formed an enterprise and no details about the enterprise's "membership, purpose, and structure."   *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475

(E.D.N.Y. 2007).  And because plaintiff does not plead any facts as to "the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants," *Cont'l Petrol. Corp., Inc. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012), he has not adequately pleaded "that the various associates of the alleged enterprise functioned as a continuing unit," *First Capital Asset Mgmt.*, 385 F.3d at 173 (internal quotation marks omitted) (quoting *Turkette*, 452 U.S. at 583).  Plaintiff accordingly has not pleaded "a RICO enterprise that existed separate and apart from any pattern of racketeering activity in which the [d]efendants . . . engaged." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).

Because plaintiff has not adequately alleged one of the essential elements of a substantive RICO violation—the existence of an enterprise—it appears that plaintiff's RICO claim should be dismissed.

### B.  Plaintiff fails to plead a RICO conspiracy.

Plaintiff has also failed to state a RICO conspiracy claim under 18 U.S.C. § 1962(d).  To state such a claim, a plaintiff must allege that (1) defendants "agreed to form and associate . . . with a RICO enterprise"; (2) defendants "agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise"; and (3) if those predicate acts were carried out, they would constitute a pattern of racketeering activity.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999).  Plaintiff has not adequately pleaded that defendants agreed to form a RICO enterprise, for essentially the reasons explained above.

In addition, plaintiff has not adequately pleaded an agreement to commit RICO predicate acts.  Because "the core of a RICO civil conspiracy is an agreement to commit predicate [RICO] acts," such a complaint, "at the very least, must allege specifically such an agreement." *Sky*

18

*Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).  As such, a RICO conspiracy claim will be dismissed where the plaintiff alleges "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations."  *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014).  Conclusory allegations that the defendants "agreed to commit" the violations are insufficient.  *F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2002).

The complaint offers nothing more than conclusory allegations of an agreement among the defendants.  *See* Second Am. Compl. ¶ 105 ("[T]he . . . [d]efendants knowingly agreed to participate in a criminal scheme . . . .").  Aside from a reference to an unidentified Wells Fargo "[c]ompany [m]anual that teaches its co-conspirators . . . how to manufacture a [f]orged [n]ote [i]nstrument," *ibid.*, the complaint includes no indication that the defendants had a "meeting of the minds."  *4 K & D Corp.*, 2 F. Supp. 3d at 545.  Plaintiff's unsupported assertion about the manual does not permit an inference of "more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, because even if Wells Fargo circulated such a document, it would not show that any recipients agreed to commit fraud with the bank, *see 4 K & D Corp.*, 2 F. Supp. 3d at 545 (requiring allegations that establish conscious agreement to commit predicate acts).

Accordingly, it appears that Counts Two and Three should be dismissed.  Because defendants did not seek dismissal on the grounds that I state above, plaintiff will be permitted to file a supplemental memorandum of law responding to those grounds for dismissal.

## IV.  Declaratory Judgment

Dismissal also appears to be warranted of plaintiff's request for a declaratory judgment that the deed executed on June 19, 2019 is a forgery.  Second Am. Compl. ¶¶ 119-23 (Count Five).  The Declaratory Judgment Act, 28 U.S.C. § 2201, "alone does not provide a court with

jurisdiction." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021).  Accordingly, "there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767, 769 (2d Cir. 2006).

Plaintiff has not supplied a jurisdictional basis for his declaratory judgment claim. Plaintiff suggests that defendants' forgery violated state and federal criminal law.  *See* Second Am. Compl. ¶¶ 56-57; N.Y. Penal §§ 170.10, 170.25; 18 U.S.C. § 1028.  But those criminal provisions do not provide a private cause of action.  *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 611 (S.D.N.Y. 2013); *Clark v. Student Loan Fin. Corp.*, No. 18-CV-9354 (JPO), 2019 WL 4412571, at *2 (S.D.N.Y. Sept. 16, 2019).

And plaintiff has not identified a civil provision that creates jurisdiction over his forgery claim.  While plaintiff alleges criminal forgery as a predicate act underlying his RICO claim, dismissal of those RICO claims appears warranted.  *See* pp. 15-19, *supra*.  "A plaintiff cannot maintain a claim for declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only created a procedural mechanism and not an independent cause of action."  *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861 (MKB) (RML), 2021 WL 960394, at *13 (E.D.N.Y. Mar. 15, 2021) (collecting cases).  In the event that I dismiss plaintiff's RICO claims, plaintiff cannot use RICO as a jurisdictional basis for a declaratory judgment.

Plaintiff has not identified another jurisdictional hook.  "[T]here is no cause of action for forgery under New York law," *Nirvana Int'l Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 563 (S.D.N.Y. 2012) (citing *Luckett*, 290 F.3d at 497), and plaintiff has not invoked the alleged forgery as part of his fraud claim in Count Four.  *See* Second Am. Compl. ¶¶ 109-18 (alleging

defendants committed fraud through various acts but making no mention of forged deed).
Moreover, if plaintiff had alleged that the forgery was part of a fraud in violation of New York
law, I would decline to exercise my jurisdiction to grant a declaratory judgment on that question
of state law after having dismissed all federal claims.  *See* pp. 21-22, *infra.*  For those reasons, it
appears that plaintiff's request for a declaratory judgment should be dismissed.  But because
defendants did not seek dismissal on the grounds that I state above, plaintiff may file a
supplemental memorandum of law explaining why dismissal is not in fact warranted.

**V.      Fraud Claim**

In the event that I dismiss Counts Two and Three and plaintiff's request for a declaratory
judgment, I intend to decline to exercise supplemental jurisdiction over Count Four.

Liberally construed, Count Four raises a state law claim for fraud against Thomas,
Margolin & Weinreb, Wilmington Savings Fund, Selene Finance, and Wells Fargo Bank as
trustee for SRMOF II 2011-1 Trust.  *See* Second Am. Compl. ¶¶ 109-18.  Count Four must
comprise a state law claim because plaintiff has not pointed to any available federal cause of
action.  While plaintiff cites federal criminal fraud provisions as part of his RICO claims, "unless
specifically provided for, federal criminal statutes rarely create private rights of action."  *Daniel
v. Safir*, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001).  The criminal fraud statutes do not provide
an express private cause of action, *see* 18 U.S.C. §§ 1028, 1341, 1343, and I see no basis to
imply one, *see Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989);
*Cracolici v. Saunders*, No. 18-CV-3807 (CS), 2019 WL 1862470, at *2 (S.D.N.Y. April 25,
2019); *Pierre v. U.S. Postal Serv.*, No. 18-CV-7474 (MKB), 2019 WL 653154, at *3 (E.D.N.Y.
2019); *Clark*, 2019 WL 4412571, at *2.  Plaintiff has therefore not identified a federal ground for
Count Four.  Accordingly, I construe the complaint liberally as bringing a state-law fraud action.

Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). These factors would counsel in favor of dismissing plaintiff's state-law claim in the event that his federal claims are dismissed. This case is still in its preliminary stages. The action has not passed beyond the pleading stage, and it would be at least as convenient and fair for the parties to litigate plaintiff's state-law claims in state court. Indeed, "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006); *see Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2020). Accordingly, in the event that plaintiff's federal claims are dismissed, I will likely decline to exercise supplemental jurisdiction over plaintiff's state-law fraud claims. But plaintiff may respond to this proposed course of action in his supplemental filing if he wishes.

## CONCLUSION

The Section 1983 claim is dismissed. I decline Thomas and Kichloo's request to impose monetary sanctions against plaintiff pursuant to Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . .").

Since defendants did not argue that plaintiff failed to plead an enterprise or that plaintiff lacked an independent jurisdictional basis for a declaratory judgment, plaintiff may file a response addressing those apparent deficiencies, which I will consider before deciding whether dismissal is warranted. *See Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) (collecting cases); *Hughes v. Anderson*, 449 F. App'x 49, 51 (2d Cir. 2011).

22

Within forty-five days of this Order, plaintiff may file a supplemental memorandum of law not exceeding twelve pages regarding his failure to plead an enterprise, the Court's jurisdiction to grant a declaratory judgment, and whether the Court should exercise supplemental jurisdiction over plaintiff's remaining state law claims if all his federal claims are dismissed.  All proceedings in this case are stayed for forty-five days.  At the end of that period, if plaintiff has not filed a supplemental memorandum, the case will be dismissed with prejudice.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  September 28, 2021
        Brooklyn, New York